UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOLOMON K YOUNG

    Plaintiff,                      CASE NO.:  8:20-cv-2246

vs.

LIFEFLEET SOUTHEAST, INC. d/b/a
AMERICAN MEDICAL RESPONSE,

    Defendant.
_____/

**COMPLAINT FOR DAMAGES,
EQUITABLE RELIEF, AND DEMAND FOR JURY TRIAL**

Plaintiff, SOLOMON K YOUNG, hereby sues Defendant, LIFEFLEET SOUTHEAST, INC. d/b/a AMERICAN MEDICAL RESPONSE ("AMR"), and alleges:

**NATURE OF THE ACTION**

1. This is an action brought under Chapter 760, Florida Statutes, 42 U.S.C. §1981, and 42 U.S.C. §1981a.

2. This is an action involving claims which are, individually, in excess of fifty thousand dollars ($50,000.00), exclusive of costs and interest.

**THE PARTIES**

3. At all times pertinent hereto, Plaintiff, SOLOMON K. YOUNG, has been a resident of the State of Florida and was employed by Defendant, performing work out of its Pasco County location. Plaintiff is a member of a protected class due to his race, Black and/or African American, and the fact that he reported discrimination adversely affecting him and was the victim of retaliation thereafter.

4. At all times pertinent hereto, Defendant, AMR, has been organized and existing under the laws of the State of Florida with headquarters in Hillsborough County and a working location in Pasco County. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations (FCHR) and with the Equal Employment Opportunity Commission (EEOC). This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began his employment with Defendant in or around April 2018 and worked as an Emergency Medical Technician from its Pasco County location.

7. Plaintiff applied for several promotions during his tenure with AMR for which he was qualified and yet was rejected although the position was later filled by an individual outside his protected class. By way of example only, on August 3, 2018, Plaintiff inquired with human resources employee Jessica Strout via email about additional opportunities within AMR.

8. Specifically, Plaintiff wrote:

> I am an employee with AMR and have been just over 90 days. I have a Bachelors degree in Public Safety and have over 18 years in the fire service, 9 of which in a supervisory position. If you have a position or know of a position better suited for me where I can be used in a capacity that will be beneficial to this company; I would certainly appreciate the opportunity. If you would like me to send by resume, I would happy to do so.

9. In response, Ms. Strout wrote:

> Hi Solomon, I currently do not have any positions available at this time but you can always keep an eye out on our job postings. I believe the only position open besides field crew is an Account Executive position. Please check it out on our careers page at www.amr.net. Thanks, Jessica

10. On August 17, 2018 Plaintiff applied for a human resources position within AMR but was never even contacted regarding his completed application. Plaintiff inquired and followed up but did not even receive a response or acknowledgement, nor was he provided an opportunity to submit his professional resume. This position would have been a promotion for Plaintiff but was instead filled by another employee.

11. On January 17, 2019 Plaintiff was involved in a collision of a company vehicle although he was not the driver. Shortly thereafter Plaintiff was accused of violating company policy and subjected to disciplinary action by his supervisor, Ms. Traci Frank (Caucasian), although Plaintiff was not the driver.

12. One week later, on January 24, 2019 Plaintiff anonymously inquired via telephone to AMR's main headquarters in Tampa about the process for filing a grievance against his supervisor for unfair treatment related to the recent alleged policy violation.

13. At that time, Ms. Frank had been a supervisor at AMR for well over a decade and was the only supervisor at the relatively small Pasco County location. Plaintiff had been the only African American involved in the alleged policy violation as well as in his interaction with the main headquarters wherein he inquired about filing a grievance against his supervisor.

14. Although Plaintiff had not identified himself over the phone, AMR employee Michael Beeles (Caucasian) received Plaintiff's January 24th phone call, identified the caller as

3

Plaintiff, and relayed to Administrative Supervisor John Blackburn (Caucasian) that Plaintiff wished to file a grievance related to the recent alleged policy violation for which Ms. Frank had administered discipline, which at that time Plaintiff perceived as unfair treatment.

15. Mr. Blackburn then contacted Ms. Frank, the only Pasco County Supervisor, to let her know that Plaintiff needed her instructions to file a grievance related to the recent alleged policy violation wherein she had just subjected Plaintiff to disciplinary action. Mr. Blackburn therefore contacted the exact person against whom Plaintiff had attempted to anonymously inquire about filing a grievance.

16. Ms. Frank therefore became aware of Plaintiff's grievance inquiry, and sent Plaintiff a text message with instructions to refer to a section of AMR's employee handbook – as if to make it clear that she knew Plaintiff intended to file a grievance against her.

17. Within twenty-four (24) hours of the phone call and subsequent text message from Ms. Frank, on January 25, 2019, Plaintiff encountered a doll of a raccoon hanging from its neck scarf with a small sign attached to it with the phone number for the "A.M.R Corporate Ethics Line". This lynched raccoon doll or effigy was hanging from Ms. Frank's in/out box located inside the community area of the Pasco station at the exact point and time where Plaintiff submits his timesheet at shift's end. Plaintiff had never sighted this doll/effigy before, especially hanging from its neck from his supervisor's in/out box while holding the ethics phone number.

18. The United States has a horrific history of hanging African Americans and labeling them "raccoons". Therefore, Plaintiff immediately reasonably interpreted a hanging raccoon in the deep south as a direct threat toward him as an African American male.

19. Plaintiff's shift partner, Brian Richardson (Caucasian), witnessed the raccoon

4

incident with Plaintiff and exclaimed that the hanging raccoon made him uncomfortable.

20. At that time, Plaintiff was a full-time employee and worked out of the Pasco station every Thursday, Friday, and Saturday.

21. Plaintiff almost immediately sought assistance from the EEOC/FCHR regarding the raccoon incident. On January 27, 2019, Plaintiff submitted his completed Technical Assistance Questionnaire for Employment Complaints to the FCHR, with receipt acknowledged and time-stamped by the FCHR on January 28, 2019 at 8:59 A.M. Plaintiff ultimately filed his Charge of Discrimination with the FCHR on March 6, 2019.

22. Interestingly, Defendant states its non-discriminatory reason for the raccoon hanging from Ms. Frank's in/out box is part of what it describes as a "motorcycle prank" that allegedly occurred on February 7 and 8, 2019 as verified by Ms. Frank's date-stamped text message activity.

23. However, Defendant's reason is pretextual because the raccoon incident did actually occur on January 25, 2019, which is also documented in Plaintiff's initial inquiry with the FCHR, and time-stamped by the FCHR at 8:59 A.M. on January 28, 2019, approximately ten (10) days before the motorcycle prank allegedly occurred.

24. Plaintiff continued to work his shifts although he felt increasing discomfort as a result of the raccoon incident and Defendant's inaction. On April 3, 2019, Defendant submitted its position statement to the FCHR in response to Plaintiff's Charge of Discrimination. Therein, Defendant erroneously and offensively accuses Plaintiff of lying about the date and significance of the raccoon incident; Defendant wrongfully accuses Plaintiff of conflating two events in order to conjure an apparent act of racial harassment; and Defendant improperly and wrongly states

that the ethics phone number could not possibly be associated with the underlying reasons for Plaintiff's inquiry about the process for filing a grievance against his supervisor. Further, Defendant failed to conduct any proper investigation into Plaintiff's Charge considering even Plaintiff's shift partner witnessed the scene and yet was not interviewed.

25. Shortly thereafter, in May of 2019, Plaintiff dropped his working hours from full-time to part-time because he did not want to have to go into a job where he was accused of lying about a racist threat to his life, where racist hostility was therefore obviously maintained and condoned despite written company policy to the contrary, and such hostility included but was not limited to the passive-aggressive behavior he experienced. A reasonable person in his situation would have also at least reduced their working hours for these reasons.

26. For the same reasons, Plaintiff submitted his resignation on July 2, 2019, with such resignation tantamount to constructive discharge.

27. On October 10, 2019, the FCHR determined Reasonable Cause exists to believe that an unlawful practice occurred, and that Plaintiff was subjected to unwelcome racial harassment with this threat of lynching through the hanging raccoon doll. FCHR further reasoned that "[g]iven the specific association with the offensive "coon" stereotype leveled at African Americans, there was enough evidence that this harassment was based on his race. [Plaintiff] viewed this harassment to be directed towards him, meeting the threshold of subjective severity, and in the totality of the circumstances, rises to the level of objective severity."

28. Defendants took action against Plaintiff because of Plaintiff's race and/or in retaliation for complaining and/or objecting to unlawful employment practices.

29. Plaintiff has retained the undersigned to represent his interests in this cause and is

6

obligated to pay her a fee for her services. Defendant should be made to pay said fee under §760.11, Florida Statutes, and 42 U.S.C. §1981a.

## COUNT I
## RACE DISCRIMINATION – Disparate Treatment

30. Paragraphs 1-29 are re-alleged and incorporated herein by reference.

31. This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes, 42 U.S.C. §1981, and 42 U.S.C. §1981a.

32. Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated white employees of Defendant and has been subjected to hostility and poor treatment on the basis, at least in part, of his race.

33. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

34. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

35. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

36. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race based nature and in violation of the laws set forth herein.

37. The discrimination complained of herein affected a term, condition, or privilege

7

of Plaintiff's employment with Defendant.

38. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes, and 42 U.S.C. §1981.

39. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing.

## COUNT II
## RACE DISCRIMINATION – Hostile Work Environment

40. Paragraphs 1-29 are re-alleged and incorporated herein by reference.

41. Plaintiff is an African American male, and otherwise recognized as a member of a protected classification under the law.

42. Plaintiff was subject to unwelcome racial harassment by Defendant and/or its agents.

43. The harassment Plaintiff endured was based on his race.

44. The harassment Plaintiff endured was sufficiently severe and pervasive to alter the terms of his employment.

45. Specifically, the harassment included discriminatory intimidation, ridicule, and use of inflammatory and racially derogatory symbolism and connotations, such that the terms and conditions of his employment were thereby altered.

46. The harassment was severe and pervasive.

47. The harassment permeated Plaintiff's work environment and thereby created a discriminatorily hostile and abusive working environment.

48. Defendant is liable as it knew or should have known of the conduct but failed to act.

49. Defendant failed to investigate and/or take remedial action to correct the harassment. Even worse, Defendant accused Plaintiff of lying, although documentary evidence further supports Plaintiff's claim and that contradicts Defendant's attempt to depict a non-discriminatory legitimate reason.

50. Defendant's conduct of engaging in practice of discriminating against Plaintiff violates Chapter 760, Florida Statutes, and 42 U.S.C. §1981.

51. Plaintiff has suffered damages as a result of Defendant's conduct, by and through its agents, employees and/or representatives.

52. Plaintiff suffered damages and seeks damages for his general damages, compensatory damages, punitive damages, and prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to Chapter 760, Florida Statutes, 42 U.S.C. §1981, and 42 U.S.C. §1981a; and, that Plaintiff be awarded such other relief as the Court deems just and proper.

## COUNT III
## RETALIATION

53. Paragraphs 1-29 are hereby re-alleged and reincorporated as if set forth in full herein.

54. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under 42 U.S.C § 1981

and Chapter 760, Florida Statutes.

55.    The foregoing unlawful actions by Defendant were purposeful.

56.    Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above.

57.    Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action thereafter.

58.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein, and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding damages to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining

Defendant from future violations of law enumerated herein;

      (e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs; and

      (f)    grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

DATED this 24th day of September 2020.

                              Respectfully submitted,

/s/ *Charlotte Fernée Kelly*
Charlotte Fernée Kelly (FBN: 0090105)
Fernée Kelly Law
1228 East 7th Ave.
Ste. 200
Tampa, FL 33605
Tel: (813)315-3981
charlotte@ferneekellylaw.com
ATTORNEY FOR PLAINTIFF